**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Baltimore Division**

| | |
|---|---|
| **THE ESTATE OF DAMON R. FISHER,** *et. al.*,<br>Plaintiffs<br><br>v.<br><br>**CITY OF ANNAPOLIS**<br>Defendant/Third-Party Plaintiff<br><br>The City of Annapolis<br>A municipal corporation<br>160 Duke of Gloucester Street<br>Annapolis, Maryland 21401<br>Anne Arundel County<br>and<br>Housing Authority of the<br>City of Annapolis, *et. al.*,<br>A public body corporate and politic<br>1217 Madison Street<br>Annapolis, Maryland 21403<br>Anne Arundel County<br><br>Defendant,<br>v.<br><br>**THE UNITED STATES OF AMERICA and THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**<br><br>The Associate General Counsel for Litigation, Office of Litigation<br>U.S. Department of Housing and Urban Development<br>451 Seventh Street, S.W.<br>Washington, D.C. 20410<br><br>Third-Party Defendants. | **Civil Action No.: 1:21-cv-01074-CCB** |

<u>**THIRD-PARTY COMPLAINT OF DEFENDANT CITY OF ANNAPOLIS THIRD-PARTY DEFENDANT DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**</u>

Defendant/Third-Party Plaintiff, the City of Annapolis (the "City"), by and through the undersigned counsel, brings this Third-Party Complaint against Third-Party Defendant the United States Department of Housing and Urban Development ("HUD"), pursuant to Federal Rule of Civil Procedure 14, alleges, states as follows:

## PRELIMINARY STATEMENT

Plaintiffs, the Estate of Damon R. Fisher, *et. al*, filed this action against the City alleging among other things violations of the Fair Housing Act as amended, 42 U.S.C. § 3601, et seq., the Civil Rights Act of 1866, 42 U.S.C. §§ 1982, 1983, 1985, and 1986; and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  Plaintiffs allege that the property conditions where Mr. Fisher resided was in poor condition containing mold and require repair and maintenance, and as a result, Mr. Fisher contracted pulmonary disease and died.  The properties complained of are owned by the Defendant/Cross-Defendant Housing Authority of the City of Annapolis ("HACA"), a public housing authority ("PHA"), who is responsible for the properties' maintenance and management.  Plaintiffs allege that the City should have discovered the poor condition of the properties, but it failed to inspect the properties and failed to require HACA to make the required repairs.

 HACA, like all other PHAs, operates under HUD's control and direction.  The Housing Act of 1937, 42 U.S. § 1437 *et seq.,* as amended and the Housing and Community Development Act of 1974 (individually and collectively "the Housing Act"), requires HUD to use its funding to help remedy unsafe and unsanitary housing conditions and the shortage of decent housing for low-income families.  42 U.S.C. § 1437a(b) (7).  According to the Act, HUD, in addition to other regulations, controls PHAs through its Annual Contributions Contract (hereinafter referred to as "ACC").  42 U.S.C. § 1437g.  HACA receives federal funding from HUD to maintain and

manage its properties.  The City contends that Plaintiffs' complained of conditions results from

the policies and actions of HUD and HACA in their failures to properly fund the properties and

HACA to maintain them in a safe and sanitary condition and not because of the City.  The City

seeks declaratory and injunctive relief because HUD actually caused all claims that Plaintiffs

assert against the City due to its failure to act as required by applicable law, in discriminating

against the City, HACA, Mr. Fisher, HACA Tenants and in its insufficient funding and its failure

to enforce of its own maintenance requirements for HACA Tenants' units.

<u>PARTIES</u>

1.      Defendant and Third-Party Plaintiff City of Annapolis (the "City") is a political

subdivision and a municipal corporation in Maryland.

2.      Third-Party Defendant HUD is an independent federal agency.

<u>JURISDICTION AND VENUE</u>

3.      This Court has federal subject matter jurisdiction in this matter under 28 U.S.C. §

1331 because Plaintiffs have asserted claims against Defendant/Third-Party Plaintiff alleging

violations of the Fair Housing Act as amended, 42 U.S.C. § 3601, et seq., the Civil Rights Act of

1866, 42 U.S.C. §§ 1982, 1983, 1985, and 1986; and the Equal Protection Clause of the

Fourteenth Amendment to the United States Constitution.

4.      This Court has jurisdiction pursuant to 5 U.S.C. §§ 702-703 and 28 U.S.C. §§

1331, 1361, and 2201.

5.      This Court is authorized to award the requested declaratory and injunctive relief

under 5 U.S.C. §§ 702 and 706, 28 U.S.C. §§ 1361 and 2201-2202, and its inherent equitable

powers.

6.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(e). Defendants are United States agencies or officers sued in their official capacities.

7.      The Plaintiffs and the City are residents of this judicial district, and a substantial part of the events or omissions giving rise to this case occurred within this district.

8.      The City brings this action to redress harm to it, Plaintiffs, and the residents of the City under 5 U.S.C. § 702 due to the policies and actions of HUD.

9.      This Court has supplemental jurisdiction over Plaintiff's' state law claims under 28 U.S.C. § 1367(a).

10.     Because these Third-Party claims arise out of a common nucleus of operative fact and are so related to Plaintiffs' original claims that they form part of the same case or controversy under, this Court also has supplemental jurisdiction over Defendant/Third-Party Plaintiff's claims against the Third-Party Defendant under 28 U.S.C. §1367.

## ADDITIONAL FACTUAL ALLEGATIONS

11.     Plaintiffs, the Estate of Damon R. Fisher, *et. al*, filed this action against the City alleging among other things violations of the Fair Housing Act as amended, 42 U.S.C. § 3601, et seq., the Civil Rights Act of 1866, 42 U.S.C. §§ 1982, 1983, 1985, and 1986; and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

12.     Plaintiffs allege that the property conditions where DaMon Fisher resided was in poor condition containing mold and require repair and maintenance, and as a result, Mr. Fisher contracted pulmonary disease and died.

13.     Plaintiffs allege that Mr. Fisher's residence was in the poor condition because he was African American and that because of his race and the race of HACA tenants are discriminated against and forced to live in poor conditions.

4

14.     The property where Mr. Fisher resided is owned and operated by HACA.

15.     Plaintiffs allege that the property conditions where Mr. Fisher resided are poor and require repair and maintenance, and as a result, they have suffered severe health issues.

16.     The properties complained of are owned by the Third-Party Defendant HACA, a PHA, who is responsible for the properties' maintenance and management.

17.     HACA had a non-delegable contractual duty to Mr. Fisher to provide "decent, safe, and sanitary" housing.

18.     Plaintiffs allege that the poor property conditions should have been discovered by the City that failed to inspect the properties and require HACA to make the required repairs.

19.     HACA, like all other PHAs, operates under HUD's control and direction.

20.     The Housing Act of 1937, 42 U.S. § 1437 et seq., as amended by the Act, provides that HUD is to fund PHAs and political subdivisions to help remedy unsafe and unsanitary housing conditions and the shortage of decent housing for low-income families.  42 U.S.C. § 1437a(b) (7).

21.     Pursuant to the Act, HUD, and other regulations, HUD and PHAs enter into an ACC.

22.     In accord with the ACC, HACA receives federal funding for the maintenance and management of its properties.  The City contends that the Plaintiffs complained of conditions result from the policies and actions of HUD and HACA in their failures to properly fund the properties and HACA to maintain them in a safe and sanitary condition and not because of the City.

23.     The Housing Act requires HUD to use its funding to help the "states" and cities, including Maryland and the City, to remedy unsafe and unsanitary housing conditions and the shortage of decent housing for low-income families.

24.      The Housing Act directs HUD to establish standards for PHAs' costs of operation and reasonable projections of income, taking into account the character and location of such PHAs as well as the characteristics of the families served or the costs of providing comparable services as determined by a formula representing the operations of a prototype well-managed PHA.

25.     Under the HUD's regulations and the ACC, HUD conducts an inspection of the HACA properties to assure compliance with the requirements that the properties are operated in a decent, safe, and sanitary manner.  *See* U.S. Housing Act. 42 U.S.C. § 1437d(f)(3); ACC ¶ 14.

26.     The ACC defines HACA's obligations and responsibilities under the contract. The ACC states as its Mission that:

> a.  HUD shall administer its Federal public housing program for the provision of decent, safe, and sanitary housing to eligible families in accordance with the CACC and all applicable HUD Requirements.  HUD shall provide maximum responsibility and flexibility to HAs in making administrative decisions within all applicable statutes, executive orders, regulations and this ACC.  HUD shall provide annual contributions, in the form of grants, to the HA in accordance with all applicable statutes, executive orders, regulations, and the CACC.

> b.  The HA shall use Program Receipts to provide decent, safe, and sanitary housing for eligible families in compliance with the Act and all HUD requirements.  HA shall at all times develop and operate public housing projects in a manner that promotes serviceability, economy, efficiency, and stability of the projects, and the economic and social well-being of the tenants.

ACC at 1 Mission.

27.     HUD conducts annual Public Housing Assessment System ("PHAS") evaluation to assess HACA's physical conditions, financial condition, management, and capital funding. *See* generally 24 C.F.R. Part 902.

28.     Excessive deficiencies can lead to adverse consequences ranging from more frequent inspections to the appointment of a receiver for PHAs like HACA.  24 C.F.R. §§ 902.13, 902.73, 902.75, 902.83.

29.     Every year, HUD inspects the living conditions at HACA through PHAS inspections and scores them.  *See* generally 24 C.F.R. Part 902.

30.     The result of a PHAS assessment/evaluation is a "PHAS score" of up to 100 points.  24 C.F.R. § 902.9.

31.     A PHAs overall PHAS score determines whether the housing agency will be designated as a "high performer," a "standard performer," a "substandard performer," or a "troubled performer." 24 C.F.R. §§ 902.9, 902.11.

32.     HUD gives the most weight to the physical conditions' component of PHAS inspections.  24 C.F.R. § 902.9.

33.     "The objective of the physical condition [assessment] is to determine whether a [public housing agency] is meeting the standard of decent, safe, sanitary housing in good repair." 24 C.F.R. § 902.20(a).

34.     HACA has been regularly placed on HUD's troubled property list.

35.     Even though HACA failed HUD's inspections, HUD allowed HACA to continue maintaining the properties with unsafe, unsanitary, and in poor conditions.

36.     HUD maintains the power to enforce HACA's compliance to provide safe housing, including taking the HACA property and placing it under receivership management. *See* ACC ¶ 14.

37.     HUD has the power to declare a PHA in substantial default of its ACC and take control of the PHA under the powers granted to the HUD Secretary under 42 U.S.C. § 1437d(j)(3)(A)(ii), (C).

38.     Because HUD empowers HACA to rent to low-income tenants in exchange for HUD's funding, the City's inspections could not prevent HACA from operating.

39.     HUD has the authority to appoint a receiver to take over HACA and assure that the properties are properly maintained, but the City does not have the same authority.  24 C.F.R. §§ 902.13, 902.73, 902.75, 902.83.

40.     HUD has failed to enforce its non-delegable duty to assure that HACA provides the HACA tenants with safe and sanitary housing.

41.     HUD has allowed HACA to operate with deficit funding and not provide sufficient funds for safe and sanitary housing.

42.     HUD has not provided the City with sufficient funds to assure that the HACA Tenants and other city residents may live in decent, safe, and sanitary housing.

43.     Because of the race and socioeconomic status of the HACA Tenants and other similar residents of the City, HUD has acted in a discriminatory manner exacerbating a housing crisis in the City.

44.     HACA operated under the deficit funding method, and HUD refused to approve certain expenses necessary for adequate and efficient, safe, and sanitary public housing in the City.

45.     HUD has allowed HACA to maintain the housing units in an unsafe and unsanitary manner due to a) its discriminatory practices, and b) violations of the Housing Act and other laws.

46.     Because of the race and economic levels of the HACA Tenants, HUD allowed HACA to avoid enforcement of HUD's maintenance and inspection policy.

47.     Because of the race and economic levels of the HACA Tenants, HUD allows HACA to continuously place City residents in its properties that were below the City's and HUD's standards.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF 42 U.S.C. § 1437 *et seq.*

48.     The City repeats and realleges the preceding paragraphs as if fully set forth herein.

49.     The Housing Act requires HUD to use its funding to help remedy unsafe and unsanitary housing conditions and the shortage of decent housing for low-income families.  42 U.S.C. § 1437a(b) (7).

50.     The Housing Act provides that HUD must provide funds to assist States, State political subdivisions, and PHAs with sufficient funds to provide decent and safe housing free from unsafe conditions.

51.     According to the Act, HUD, in addition to other regulations, controls PHAs through the ACC.

52.     HUD's policies and actions have failed to provide sufficient funding to the City and HACA to provide the HACA Tenants and other city residents similarly situated with decent and safe housing.

53.     As a result of HUD's policies and actions, the Mr. Fisher, HACA Tenants and other city residents similarly situated, HACA, and the City are continuously harmed.

**COUNT II**
**(Violation of Fair Housing Act, 42 U.S.C. § 3601 et seq.)**

54.    The City repeats and realleges the preceding paragraphs as if fully set forth herein.

55.    HUD's policy of insufficiently funding HACA and the City and its non-enforcement of its requirements for providing decent, safe, and sanitary housing constitutes a violation of the Fair Housing Act, 42 U.S.C. §3604 et seq., which makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."

56.    HUD's policy of insufficiently funding HACA and the City, and its non-enforcement of its requirements for providing decent, safe and sanitary housing, inflicts disproportionate harm on HACA Tenants and other City residents similarly situated.

57.    The disproportionate harm experienced by Mr. Fisher is the direct and immediate consequence of HUD's policy of non-enforcement of HUD regulations.

58.    As a result of HUD's aforementioned policies, HACA Tenants and other City residents similarly situated were denied the opportunity to live in decent, safe, and sanitary housing.

59.    HUD's acts, policies, and practices constitute discrimination in violation of the Fair Housing Act, as amended, 42 U.S.C. §3604, and its implementing regulations in that:

a.    HUD's acts, policies, and practices have made and continue to make housing unavailable because of race in violation of 42 U.S.C. §3604(a).  Specifically, HUD regulations provide in pertinent part that "[i]t shall be unlawful, because of race [or] national origin . . . to discourage or obstruct choices in a community, neighborhood or

10

development." 24 C.F.R. § 100.70(a).  Such acts "include but are not limited to: (1) Discouraging any person from inspecting, purchasing, or renting a dwelling . . . because of the race [or] national origin . . . of persons in a community, neighborhood or development." 24 C.F.R. § 100.70(c)(1); and

b.      HUD's acts, policies, and practices provide different terms, conditions, and privileges of rental housing based on race, violating 42 U.S.C. § 3604(b).  Specifically, HUD's regulations implementing § 3604(b) specify that "[p]rohibited actions under this section include, but are not limited to . . . failing or delaying maintenance or repairs of sale or rental dwellings" and "[l]imiting the use of privileges, services or facilities associated with a dwelling" because of race or national origin.  24 C.F.R. § 100.65.

60.      Additionally, HUD's acts, policies, and practices perpetuate segregation in violation of the Fair Housing Act, which is prohibited.  HUD's regulations implementing the Fair Housing Act state that "[a] practice has a discriminatory effect where it...creates, increases, reinforces or perpetuates segregated housing patterns because of race[.]" 24 C.F.R. § 100.500(a).

61.      Plaintiffs, HACA Tenants and other City residents similarly situated and the City are aggrieved persons as defined in 42 U.S.C. § 3602 (d) and (i) and have been and are continuously harmed by HUDs' discriminatory conduct defined by 42 U.S.C. § 3602(f) and who have been injured by HUD's policies and actions.

## COUNT III
### (Violation of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States)

62.      The City repeats and realleges the preceding paragraphs as if fully set forth herein.

63.     HUD's discriminatory practices, made in reckless or callous indifference or disregard of its statutory and regulatory mandates, have deprived the Plaintiff, HACA Tenants and other City residents similarly situated, HACA, and the City, based on the race and color of the Plaintiffs, HACA Tenants and others, of living in decent, safe and sanitary housing as that enjoyed by Caucasian persons in violation of the Civil Rights Act of 1964.  As a result of HUD's policies and actions, the Plaintiffs, HACA Tenants and other City residents similarly situated, HACA, and the City have been continuously harmed.

## PRAYER FOR RELIEF

Wherefore, the City asks this Court to issue an order and judgment:

A.     Declaring, pursuant to 28 U.S.C. § 2201, that HUD's policy and actions in not providing sufficient funds to the City and HACA to provide decent and safe housing for the HACA Tenants and other City residents similarly situated violate HUD's responsibilities under the applicable law.

B.     Declaring, pursuant to 28 U.S.C. § 2201, that HUD's policy and actions in not exercising its authority to inspect and enforce its requirements for HACA to provide decent and safe housing and not providing sufficient funds to the City and HACA to provide decent and safe housing for the HACA Tenants and other City residents similarly situated violates HUD's responsibilities under the applicable law.

C.     Declaring, pursuant to 28 U.S.C. § 2201, that HUD acts arbitrary and capriciously when it chooses not to enforce PHAs like HACA to maintain their properties in a decent and safe condition.

D.     Declaring, pursuant to 28 U.S.C. § 2201, that any injuries claimed by the HACA Tenants are a result of HUD policies and actions and not that of the City.

E.      Declaring, pursuant to 28 U.S.C. § 2201, that HUD's policies and actions discriminate against the HACA Tenants and other City residents similarly situated due to their race, color, and socioeconomic status, which prevent HUD from providing sufficient funding for and enforcing the requirements of the law that HUD provides decent and safe housing violates the Fair Housing Act;

F.      Declaring, pursuant to 28 U.S.C. § 2201, that HUD's policies and actions discriminate against the HACA Tenants and other City residents similarly situated due to their race, color, and socioeconomic status, which prevent HUD from providing sufficient funding for and enforcing the requirements of the law that HUD provides decent and safe housing violates the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States;

G.      Preliminarily and permanently enjoining HUD from discriminating against the HACA Tenants and other City residents similarly situated, the City and HACA due to the race and color of the HACA Tenants and other City residents similarly situated.

H.      Preliminarily and permanently enjoining HUD Defendants from imposing policies and taking actions that prohibit it from providing sufficient funds necessary for the City and HACA to provide decent and safe housing for HACA Tenants and other City residents similarly situated;

I.      Preliminarily and permanently enjoining HUD Defendants from imposing policies and taking actions that prohibit it from enforcing its authority to cause HACA to provide decent and safe housing for HACA Tenants and other City residents similarly situated; and

J.      Granting any and all other relief the Court deems just and proper.

**CITY OF ANNAPOLIS**
**OFFICE OF LAW**

13

By:   /s/
     D. Michael Lyles, City Attorney #13120
     160 Duke of Gloucester St.
     Annapolis, MD 21401
     (410)-263-7954
     (410)-268-3916 FAX
     dmlyles@annapolis.gov

By:   /s/
     Joel Braithwaite, Assistant City Attorney
     #28081
     160 Duke of Gloucester St.
     Annapolis, MD 21401
     (410)-263-7954
     (410)-268-3916 FAX
     jabraithwaite@annapolis.gov

By:   /s/
     Kerry E. Berger, Assistant City Attorney
     #56359
     160 Duke of Gloucester St.
     Annapolis, MD 21401
     (410)-263-7954
     (410)-268-3916 FAX
     keberger@annapolis.gov

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that, on May 24, 2022, a true and correct copy of the foregoing Third-Party Complaint of Defendant City of Annapolis Third-Party Defendant Department of Housing and Urban Development were electronically filed, using the Court's CM/ECF system, which caused a copy of this report to be served upon Counsel of Record:

P. Joseph Donahue, Esquire
The Donahue Law Firm, LLC
18 West Street
Annapolis, Maryland 21401
pjd@thedonahuelawfirm.com
*Attorney for Plaintiffs in Fisher*

Emanwel J. Turnbull
Peter A. Holland
914 Bay Ridge Rd. Ste 230
Annapolis, MD 21403

eturnbull@hollandlawfirm.com
peter@hollandlawfirm.com
*Attorney for Plaintiffs in Fisher*

Carrie Blackburn Riley
Blackburn Riley LLC
Bosley Hall
222 Courthouse Court
Suite 2F
Baltimore, MD 21204
cbr@blackburnriley.com
*Attorney for Housing Authority of the City of Annapolis*