# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Baltimore Division

| | |
|---|---|
| **THE ESTATE OF DAMON R. FISHER,** *et al.*, <br><br>       Plaintiffs <br><br>       v. <br><br> **CITY OF ANNAPOLIS** <br>       Defendant/Third-Party Plaintiff <br><br>   The City of Annapolis <br>   A municipal corporation <br>   160 Duke of Gloucester Street <br>   Annapolis, Maryland 21401 <br>   Anne Arundel County <br> and <br>   Housing Authority of the <br>   City of Annapolis, et. Al., <br>   A public body corporate and politic <br>     1217 Madison Street <br>     Annapolis, Maryland 21403 <br>     Anne Arundel County <br><br>       Defendant, <br>     v. <br> **THE UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; and MARCIA L. FUDGE in her official capacity as Secretary of the United States Department of Housing and Urban Development** <br><br>   The Associate General Counsel for <br>   Litigation, Office of Litigation <br>   U.S. Department of Housing and Urban <br>   Development <br>   451 Seventh Street, S.W. <br>   Washington, D.C. 20410 <br><br>     Third-Party Defendants. | **Civil Action No.: 1:21-cv-01074-CCB** |

## AMENDED THIRD-PARTY COMPLAINT OF DEFENDANT CITY OF ANNAPOLIS AGAINST THIRD-PARTY DEFENDANT DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

Defendant/Third-Party Plaintiff, the City of Annapolis (the "City"), by and through the undersigned counsel, brings this Amended Third-Party Complaint against Third-Party Defendant the United States Department of Housing and Urban Development and Marcia L. Fudge, in her official capacity as Secretary of the United States Department of Housing and Urban Development (individually and collectively "HUD"), under Federal Rule of Civil Procedure 14 and 15 and states as follows:

### PRELIMINARY STATEMENT

Plaintiffs, the Estate of Damon R. Fisher, *et al*., filed this action against the City alleging violations for non-compliance with The Housing Act of 1937, 42 U.S. § 1437 *et seq.*, and violations of the Fair Housing Act as amended, 42 U.S.C. § 3601, et seq., the Civil Rights Act of 1866, 42 U.S.C. §§ 1982, 1983, 1985, and 1986; and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  Plaintiffs allege that the property conditions where Damon Fisher ("Mr. Fisher") resided was in poor condition containing mold and require repair and maintenance, and as a result, Mr. Fisher contracted pulmonary disease and died. The properties complained of are owned by the Third-Party Defendant Housing Authority of the City of Annapolis ("HACA"), a public housing authority ("PHA") responsible for the properties' maintenance and management. Plaintiffs allege that the City should have discovered the poor condition of the properties, but it failed to inspect the properties and failed to require HACA to make the required repairs.

HACA, like all other PHAs, operates under HUD's control and direction.  The Housing Act of 1937, 42 U.S. § 1437 *et seq.,* as amended and the Housing and Community Development

Act of 1974 (individually and collectively "the Housing Act"), requires HUD to use its funding

to help remedy unsafe and unsanitary housing conditions and the shortage of decent housing for

low-income families. 42 U.S.C. § 1437(a). According to the Act, HUD, in in addition to other

regulations, controls PHAs through its Annual Contributions Contract (hereinafter referred to as

"ACC").  42 U.S.C. § 1437g. HACA receives federal funding from HUD to maintain and

manage its properties.  The City contends that Plaintiffs' complained of conditions result from

the policies and actions of HUD and HACA in their failures to properly fund the properties and

to maintain them in a safe and sanitary condition, and to comply with their own administrative

procedures and other laws.  The City seeks declaratory and injunctive relief against HUD

because of its failure to act as required by applicable law, in discriminating against the City,

HACA, Mr. Fisher, and HACA's tenants ("HACA Tenants"), by its insufficient funding and

failure to enforce its own maintenance requirements at Mr. Fisher's and HACA Tenants' units,

and to cease HACA's operations in order to assure safe and sanitary housing.

## PARTIES

1.      Defendant and Third-Party Plaintiff City of Annapolis is a political subdivision

and a municipal corporation in Maryland.

2.      Third-Party Defendant HUD is an independent federal agency.

3.      Third-Party Defendant Marcia L. Fudge, in her official capacity, is the Secretary

of HUD.

## JURISDICTION AND VENUE

4.      This Court has federal subject matter jurisdiction in this matter under 28 U.S.C. §

1331 because Plaintiffs have asserted claims against Defendant/Third-Party Plaintiff alleging

violations of the Fair Housing Act as amended, 42 U.S.C. § 3601, et seq., the Civil Rights Act of

1866, 42 U.S.C. §§ 1982, 1983, 1985, and 1986; the Administrative Procedures Act, 5 U.S.C. § §

702 and 706(a) and (b); and the Equal Protection Clause of the Fifth Amendment to the United

States Constitution.

5.      This Court has jurisdiction pursuant to 5 U.S.C. §§ 702, 703, 704, 706, and 28

U.S.C. §§ 1331, 1361, and 2201.

6.      This Court is authorized to award the requested declaratory and injunctive relief

under 5 U.S.C. §§ 702 and 706, 28 U.S.C. §§ 1361 and 2201-2202, and its inherent equitable

powers.

7.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(e).

Defendants are United States agencies or officers sued in their official capacities.

8.      The Plaintiffs and the City are residents of this judicial district, and a substantial

part of the events or omissions giving rise to this case occurred within this district.

9.      The City as itself and as parens patriae brings this action to redress harm to it,

Plaintiffs, and the residents of the City under 5 U.S.C. § 702 due to the policies and actions of

HUD.

**ADDITIONAL FACTUAL ALLEGATIONS**

10.     Plaintiffs, the Estate of Damon R. Fisher, *et al*., filed this action against the City

alleging violations of the Fair Housing Act as amended, 42 U.S.C. § 3601, et seq., the Civil

Rights Act of 1866, 42 U.S.C. §§ 1982, 1983, 1985, and 1986; and the Equal Protection Clause

of the Fourteenth Amendment to the United States Constitution.

11.     Plaintiffs allege that the property conditions where Damon Fisher resided was in

poor condition containing mold and requiring repair and maintenance. As a result, Mr. Fisher

contracted pulmonary disease and died.

12.     Plaintiffs allege that Mr. Fisher's residence was in the poor condition because he was African American and that because of his race and the race of HACA Tenants, he was discriminated against and forced to live in poor conditions.

13.     The property where Mr. Fisher resided is owned and operated by HACA.

14.     Plaintiffs allege that the property conditions where Mr. Fisher resided were poor and required repair and maintenance, and as a result, he suffered severe health issues, claiming the same conditions continue unabated.

15.     The properties complained of are owned by the Third-Party Defendant Housing Authority of the City of Annapolis ("HACA"), a public housing authority ("PHA") that is responsible for the properties' maintenance and management.

16.     Plaintiffs allege that the poor property conditions should have been discovered by the City, which failed to inspect the properties and require HACA to make the required repairs.

17.     HACA, like all other PHAs, operates under HUD's control and direction.

18.     The Housing Act of 1937, 42 U.S. § 1437 et seq., as amended by the Act, provides that HUD is to fund PHAs and political subdivisions to help remedy unsafe and unsanitary housing conditions and the shortage of decent housing for low-income families. 42 U.S.C. § 1437(a)

19.     Pursuant to the Act, HUD, and other regulations, HUD and PHAs enter into an Annual Contribution Contract ("ACC").

20.     In accordance with the ACC, HACA receives federal funding for the maintenance and management of its properties. The City contends that the Plaintiffs' complained-of conditions result from the policies, actions, and inactions of HUD and HACA demonstrated by

their failures to properly fund the properties and HACA's failure to maintain them in a safe and

sanitary condition, and not because of the City.

21.     The Housing Act requires HUD to use its funding to help the "states" and cities,

including Maryland and the City, to remedy unsafe and unsanitary housing conditions and the

shortage of decent housing for low-income families.

22.     The Housing Act directs HUD to establish standards for PHAs' costs of operation

and reasonable projections of income. This calculation takes into account the character and

location of such PHAs as well as the characteristics of the families served or the costs of

providing comparable services as determined by a formula representing the operations of a

prototype well-managed PHA.

23.     Under HUD's regulations and the ACC, HUD is required to inspect the HACA

properties to assure compliance with the requirements that the properties are operated in a

decent, safe, and sanitary manner.  *See* U.S. Housing Act. 42 U.S.C. § 1437d(f)(3); ACC ¶ 14.

24.     The ACC defines HACA's obligations and responsibilities under the contract.

The ACC states as its Mission that:

> a.      HUD shall administer its Federal public housing program for the provision
> of decent, safe, and sanitary housing to eligible families in accordance with the CACC
> and all applicable HUD Requirements.  HUD shall provide maximum responsibility and
> flexibility to Has in making administrative decisions within all applicable statutes,
> executive orders, regulations and this ACC.  HUD shall provide annual contributions, in
> the form of grants, to the HA in accordance with all applicable statutes, executive orders,
> regulations, and the CACC.
>
> b.      The [Housing Authority] shall use Program Receipts to provide decent,
> safe, and sanitary housing for eligible families in compliance with the Act and all HUD
> requirements.  HA shall at all times develop and operate public housing projects in a
> manner that promotes serviceability, economy, efficiency, and stability of the projects,
> and the economic and social well-being of the tenants.

ACC at 1 Mission.

25.     HUD conducts an annual Public Housing Assessment System ("PHAS") evaluation to assess HACA's physical conditions, financial condition, management, and capital funding. *See generally* 24 C.F.R. Part 902.

26.     HUD physically inspects each property and scores them.

27.     Excessive deficiencies can lead to adverse consequences ranging from more frequent inspections to the appointment of a receiver for PHAs like HACA. 24 C.F.R. §§ 902.13, 902.73, 902.75, 902.83.

28.     Every year, HUD inspect the living conditions at HACA through PHAS inspections. *See generally* 24 C.F.R. Part 902.

29.     The result of a PHAS assessment/evaluation is a "PHAS score" of up to 100 points.  24 C.F.R. § 902.9.

30.     A PHA's overall PHAS score determines whether the housing agency will be designated as a "high performer," a "standard performer," a "substandard performer," or a "troubled performer." 24 C.F.R. §§ 902.9, 902.11.

31.     HUD gives the most weight to the physical conditions component of PHAS inspections. 24 C.F.R. § 902.9.

32.     "The objective of the physical condition [assessment] is to determine whether a [public housing agency] is meeting the standard of decent, safe, sanitary housing in good repair." 24 C.F.R. § 902.20(a).

33.     HACA has been regularly placed on HUD's troubled property list. Even though HACA failed HUD's inspections, HUD allowed HACA to continue to maintain the properties with unsafe, unsanitary, and in poor conditions.

34.     HUD maintains the power to enforce HACA's compliance to provide safe

housing, including taking the HACA property and placing it under receivership management.

*See* ACC ¶ 14.

35.     HUD has the power to declare a PHA in substantial default of its Annual

Contributions Contract and take control of the PHA under the powers granted to the HUD

Secretary under 42 U.S.C. § 1437d(j)(3)(A)(ii), (C).

36.     Because HUD empowers HACA to rent to low-income tenants in exchange for

HUD's funding, the City's inspections could not prevent HACA from operating.

37.     HUD has the authority to appoint a receiver to take over HACA and assure that

the properties are properly maintained, but the City does not have the same authority.  24 C.F.R.

§§ 902.13, 902.73, 902.75, 902.83.

38.     HUD has failed to enforce its duty to assure that HACA provides the Plaintiffs

with safe and sanitary housing.

39.     HUD has allowed HACA to operate with deficit funding and did not provide

HACA or the City with sufficient funds for safe and sanitary housing.

40.     Because of the race and socioeconomic status of the HACA Tenants and other

similar residents of the City, HUD has acted in a discriminatory manner exacerbating a housing

crisis in the City.

41.     According to Plaintiffs, and upon information and belief, the racial makeup and

statistical profile of public housing is as follows: "The Housing Authority of the City of

Annapolis has six low-income housing properties: Bloomsbury Square; Harbor House;

Newtowne Twenty; Eastport Terrace; Robinwood; and Morris H. Blum Senior Apartments.

Morris H. Blum Senior Apartments is restricted to older and disabled persons. Racial

composition of these low-income housing developments is not directly available from public

sources, but the racial composition of the Census block (the immediate neighborhood) where

each property is located can be determined from the 2010 Census. The Census blocks for each of

the six low-income housing properties are identified using the street addresses listed by the

Housing Authority of the City of Annapolis. The Census Bureau's American Factfinder street

address function identifies Census blocks based on street addresses." Plaintiff's ("Pl.'s") Compl.

at ¶ 44-45.

42.      "Five of the Housing Authority properties are located in majority Black

Census blocks. Three of the Housing Authority properties (Bloomsbury Square, Newtowne

Twenty, and Robinwood) are in blocks where **more than 90% of residents are Black.** Whites

comprise 58.9% of the residents in the block where the Morris H. Blum Senior Apartments is

located. 16.3% of the residents are Black and 21.3% of the residents are Latino.[1] Blum is the only

Housing Auth6ority property designated for seniors and disabled people, and it is the only Housing

Authority property located in a majority White Census block." Pl.'s Compl. at ¶ 46.

43.      "The six Housing Authority properties are in blocks where Blacks comprise

67.5% of the residents, Whites comprise 22.6% of the residents, and Latinos comprise 5.7% of

the residents. In contrast, in the City of Annapolis as a whole, Whites accounted for 53.5% of

residents, Blacks accounted for 25.7% of residents, and Latinos accounted for 16.8% of

residents. Residents of the six Housing Authority properties are disproportionately Black. The

proportion of Black residents in these properties is 2.6 times greater than the proportion of Black

residents in the City of Annapolis." Pl.'s Compl. at ¶ 47.

44.      "The five Housing Authority properties **not** designated as senior and disabled

housing are in blocks where Blacks comprise 71.5% of the residents, Whites comprise 19.7% of

the residents, and Latinos comprise 4.4% of the residents. As noted above, Whites accounted for

53.5% of residents in the City of Annapolis, Blacks accounted for 25.7% of residents, and

Latinos accounted for 16.8% of residents. Residents of the five Housing Authority properties not

designated as senior housing are disproportionately Black. The proportion of Black residents in

the neighborhoods where these properties are located is 2.8 times greater than the proportion of

Black residents in the City of Annapolis." Pl.'s Compl. at ¶ 48.

45.      "*The City of Annapolis Five Year Consolidated Housing and Community

Development Plan Federal Fiscal Year 2015-2019* identifies the racial distribution of residents in

the public housing properties. Of the 831 public housing units, 759 (91.3%) were identified as

occupied by Blacks and 58 (7.0%) were occupied by Whites. . . . The race of the Hispanic

residents is not reported. This report was submitted in May 2015, so these numbers presumably

represent the public housing population in 2015. In 2010, Whites accounted for 53.5% of

residents in the City of Annapolis, Blacks accounted for 25.7% of residents, and Latinos

accounted for 16.8% of residents. Based on the City's report and the 2010 Census data, the

proportion of Black residents in these properties is 3.6 times greater than the proportion of Black

residents in the City of Annapolis." Pl.'s Compl. at ¶ 49.

46.      HACA operated under the deficit funding method, and HUD refused to approve

certain expenses necessary for adequate and efficient, safe, and sanitary public housing in the

City.

47.      Pursuant to the City's municipal code, dwelling units offered for rent in the City

of Annapolis must comply with the various facility, equipment, and maintenance requirements

contained therein.

48.     If, upon inspection, a dwelling unit fails to comply with the City's minimum

standards for facilities, equipment, or maintenance, the owner of the dwelling unit will be

administratively required or judicially mandated pursuant to municipal citation to make

corrections and/or take abatement measures in order to bring the dwelling unit into compliance

with the City's code.

49.     A property owner's failure to comply with the City's minimum standards for

facilities, equipment, and maintenance requirements will warrant municipal infraction citations

against the property owner, which are filed in the District Court of Maryland.

50.     HUD's failure to sufficiently fund HACA has prevented, and continues to

prevent, HACA from being able to pay for correction and abatement of those conditions at

HACA's properties which, upon inspection, violate the City's facility, equipment, and

maintenance requirements and have caused Plaintiffs to as a last resort pursue this meritless

litigation against the City.

51.     HUD's failure to sufficiently fund HACA has caused the facilities, equipment,

and maintenance at HACA properties to remain in a constant state of violation of the City's

minimum requirements regarding the same which has, during the period complained of by

Plaintiffs, made the inspections regime irrelevant to resolving claims by any potential claimants,

including those in the instant matter

52.     As a result of HUD's actions and inaction, the City's inspection regime and

enforcement tools are meaningless. The conditions at HACA properties continue to degrade

whether or not inspections at HACA properties are conducted.

53.     HUD has allowed HACA to maintain the housing units in an unsafe and unsanitary manner due to a) its discriminatory practices, and b) violations of the Housing Act and other laws.

54.     Because of the race and economic levels of the HACA Tenants, HUD allowed HACA to avoid HUD's maintenance and inspection policy.

55.     Because of the race and economic levels of the HACA Tenants, HUD allows HACA to continuously place City residents in its properties that were below the City's and HUD's standards.

## CLAIMS FOR RELIEF

### COUNT I
### (Violation of 42 U.S.C. § 1437, et seq.)

56.     The City repeats and realleges the preceding paragraphs as if fully set forth herein.

57.     The Housing Act requires HUD to use its funding to help remedy unsafe and unsanitary housing conditions and the shortage of decent housing for low-income families. 42 U.S.C. § 1437(a).

58.     The Housing Act provides that HUD must provide funds to assist States, State political subdivisions, and PHAs with sufficient funds to provide decent and safe housing free from unsafe conditions.

59.     According to the Act, HUD, in addition to other regulations, controls PHSs through the ACC.

60.     HUD's policies and actions have failed to provide sufficient funding to the City and HACA to provide HACA Tenants and other African-American city residents with decent and safe housing. HUD has further failed to enforce its maintenance requirements and has not

moved to place HACA in a receivership as required by its regulation. All told, these failures

deprived African-Americans of housing contrary to its own rule, mandates and regulations.

61.     As a result of HUD's policies, actions and inaction, HUD abused its discretion.

As a direct and proximate result, Mr. Fisher, HACA Tenants and other city residents similarly

situated, HACA, and the City was and are continuously harmed.

**COUNT II**
**(Violation of Fair Housing Act, 42 U.S.C. § 3601 et seq.)**

62.     The City repeats and realleges the preceding paragraphs as if fully set forth

herein.

63.     HUD's policy of insufficiently funding HACA and the City and its non-

enforcement of its requirements for providing decent, safe, and sanitary housing constitutes a

violation of the Fair Housing Act, 42 U.S.C. §3604 *et seq.*, which makes it unlawful to

"discriminate against any person in the terms, conditions, or privileges of sale or rental of a

dwelling, or in the provision of services or facilities in connection therewith, because of race,

color, religion, sex, familial status, or national origin."

64.     HUD's policies inflict disproportionate harm on HACA Tenants and other

African-American city residents.  Further, this policy of underfunding and inaction diminished

the City's overall available housing stock and limited the availability of public housing. The

disproportionate harm experienced is the direct and proximate consequence of HUD's policy of

underfunding and non-enforcement of the HUD regulations.

65.     Second, as a result of HUD's aforementioned policies, HACA Tenants and other

City residents were denied the opportunity to live in decent, safe, and sanitary housing while

similarly situated White residents were afforded safe, sanitary and decent housing. Thus, HUD's

acts, policies, and practices constitute discrimination in violation of the Fair Housing Act, as

amended, 42 U.S.C. §3604, and its implementing regulations in that:

> a.  HUD's acts, policies, and practices have made and continue to make
>
> housing unavailable because of race in violation of 42 U.S.C. §3604(a).
>
> Specifically, HUD regulations provide in pertinent part that "[i]t shall be
>
> unlawful, because of race [or] national origin . . . to discourage or obstruct choices
>
> in a community, neighborhood or development." 24 C.F.R. § 100.70(a).  Such
>
> acts "include but are not limited to: (1) Discouraging any person from inspecting,
>
> purchasing, or renting a dwelling . . . because of the race [or] national origin . . .
>
> of persons in a community, neighborhood or development." 24 C.F.R. §
>
> 100.70(c)(1); and
>
> b.  HUD's acts, policies, and practices provide different terms, conditions,
>
> and privileges of rental housing based on race, violating 42 U.S.C. § 3604(b).
>
> Specifically, HUD's regulations implementing § 3604(b) specify that
>
> "[p]rohibited actions under this section include, but are not limited to . . . failing
>
> or delaying maintenance or repairs of sale or rental dwellings" and "[l]imiting the
>
> use of privileges, services or facilities associated with a dwelling" because of race
>
> or national origin. 24 C.F.R. § 100.65.

66.  Additionally, HUD's acts, policies, and practices perpetuate segregation in

violation of the Fair Housing Act, which is prohibited.  HUD's regulations implementing the Fair

Housing Act state that "[a] practice has a discriminatory effect where it...creates, increases,

reinforces or perpetuates segregated housing patterns because of race[.]" 24 C.F.R. § 100.500(a).

67.     Plaintiffs, Mr. Fisher, HACA Tenants, and other African-American City residents similarly situated and the City are aggrieved persons as defined in 42 U.S.C. § 3602 (d) and (i) and have been and are continuously harmed by HUDs' discriminatory conduct defined by 42 U.S.C. § 3602(f) and who have been injured by HUD's policies and actions.

**COUNT III**
**(Violation of Equal Protection guaranteed by the Fifth Amendment to the Constitution of the United States)**

68.     The City repeats and realleges the preceding paragraphs as if fully set forth herein.

69.     HUD's discriminatory practices made in reckless or callous indifference or disregard of its statutory and regulatory mandates, have deprived the Plaintiffs, HACA Tenants, and other City residents similarly situated, HACA, and the City, based on the race and color of the Plaintiffs, HACA Tenants, and others, of living in decent, safe and sanitary housing as that enjoyed by Caucasian persons in violation of the Civil Rights Act of 1964. As a result of HUD's policies and actions, the Plaintiffs, HACA Tenants and other City residents similarly situated, HACA, and the City have been continuously harmed.

**PRAYER FOR RELIEF**

Wherefore, the City asks this Court to issue an order and judgment:

A.     Declaring, pursuant to 28 U.S.C. §2201, that HUD's policy and actions in not providing sufficient funds to the City and HACA to provide decent and safe housing for the HACA Tenants and other City residents similarly situated violate HUD's responsibilities under the applicable law;

B.     Declaring, under 28 U.S.C. §2201, that HUD's policy and actions in not exercising its authority to inspect and enforce its requirements for HACA to provide decent and

15

safe housing and not providing sufficient funds to the City and HACA to provide decent and safe

housing for the HACA Tenants and other City residents similarly situated violates HUD's

responsibilities under the applicable law;

C.      Declaring, under 28 U.S.C. § 2201, that HUD abuses its discretion acts when it

chooses not to enforce PHAs like HACA to maintain their properties in a decent and safe

condition.

D.      Declaring, under 28 U.S.C. § 2201, that any injuries claimed by the Plaintiffs and

HACA Tenants are a result of HUD policies and actions and not that of the City;

E.      Declaring, under 28 U.S.C. § 2201, that HUD's policies and actions discriminate

against HACA Tenants and other City residents similarly situated due to their race, color, and

socioeconomic status, which prevent HUD from providing sufficient funding for and enforcing

the requirements of the law that HUD provides decent and safe housing violates the Fair Housing

Act;

F.      Declaring, under 28 U.S.C. § 2201, that HUD's policies and actions discriminate

against the HACA Tenants and other City residents similarly situated due to their race, color, and

socioeconomic status, which prevent HUD from providing sufficient funding for and enforcing

the requirements of the law that HUD provides decent and safe housing violates the Civil Rights

Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of

the United States;

G.      Direct HUD to place HACA under an administrative receivership pursuant to 42

U.S.C. 1437d, or, alternatively, place HACA under judicial receivership, in order to conduct the

affairs of the Housing Authority of the City of Annapolis in a manner consistent with statutory,

regulatory, and contractual obligations of the Housing Authority of the City of Annapolis and in accordance with any additional terms and conditions the Court may provide;

H.      Preliminarily and permanently enjoining HUD from discriminating against HACA Tenants and other City residents similarly situated, the City and HACA due to the race and color of HACA Tenants and other City residents similarly situated;

I.      Preliminarily and permanently enjoining HUD Defendants from imposing policies and taking actions that prohibit it from providing sufficient funds necessary for the City and HACA to provide decent and safe housing for HACA Tenants and other City residents similarly situated;

J.      Preliminarily and permanently enjoining HUD Defendants from imposing policies and taking actions that prohibit it from enforcing its authority to cause HACA to provide decent and safe housing for HACA Tenants and other City residents similarly situated; and

K.      Granting any and all other relief the Court deems just and proper.

Respectfully submitted,

**CITY OF ANNAPOLIS**
**OFFICE OF LAW**


By:      _____/s/_____
D. Michael Lyles, City Attorney #13120
160 Duke of Gloucester St.
Annapolis, MD 21401
(410)-263-7954
(410)-268-3916 FAX
dmlyles@annapolis.gov


By:      _____/s/_____
Joel Braithwaite, Assistant City Attorney #28081
160 Duke of Gloucester St.
Annapolis, MD 21401

(410)-263-7954
(410)-268-3916 FAX
jabraithwaite@annapolis.gov


By:         /s/
            Mark L. Fulton, III, Assistant City Attorney
            #30401
            160 Duke of Gloucester St.
            Annapolis, MD 21401
            (410)-263-7954
            (410)-268-3916 FAX
            mlfulton@annapolis.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2022, a copy of the foregoing Amended Third-Party Complaint of Defendant City of Annapolis Against Third-Party Defendant Department of Housing and Urban Development was electronically served via the Court's CM/ECF system upon:

P. Joseph Donahue, Esquire
18 West Street
Annapolis, Maryland 21401
pjd@thedonahuelawfirm.com
*Counsel for Plaintiffs in Fisher*

Emanwel J. Turnbull
Peter A. Holland
914 Bay Ridge Rd., Suite 230
Annapolis, Maryland 21403
eturnbull@hollandlawfirm.com
peter@hollandlawfirm.com
*Counsel for Plaintiffs in Fisher*

Carrie Blackburn Riley
Blackburn Riley LLC
222 Courthouse Court, Suite 2F
Baltimore, Maryland 21204
cbr@blackburnriley.com
*Counsel for Housing Authority of the City of Annapolis*

Ariana W. Arnold
Assistant United States Attorney
36 S. Charles St., 4th Floor
Baltimore, Maryland 21201
Ariana.arnold@usdoj.gov
*Counsel for Department of Housing and Urban Development*

_____/s/_____
Mark L. Fulton, III
