IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ESTATE OF DAMON R. FISHER, *et al.*, | |
| v. | Civil Action No. CCB-21-1074 |
| CITY OF ANNAPOLIS, *et al.* | Cross-Docketed in Related Case: *Johnson et al. v. City of Annapolis*, Civ. No. CCB-21-1120 |

## **MEMORANDUM**

Now pending before the court is the plaintiffs' renewed motion for summary judgment on the issue of the City of Annapolis's ("the City") disparate impact liability under the Fair Housing Act ("FHA").[1] In opposing summary judgment, the City moved to strike the plaintiffs' motion and some of the evidence on which it relies, and moved for extensive discovery to oppose the plaintiffs' motion and file its own motion for summary judgment. This briefing structure was permitted by the court's April 19, 2024, Order. Scheduling Order, ECF 167. The City's motions to strike and for discovery are fully briefed. Although the City included a "request for emergency hearing," in the title of its discovery motion, none of the briefing addressed the need for a hearing, and none is necessary. *See* Local Rule 105.6. Upon review of the filings, and for the following reasons, the plaintiffs' renewed motion for summary judgment will be denied without prejudice, the City's motion to strike will be denied as moot, and the City's discovery motion will be granted in part and deferred in part.[2]

---

[1] "The plaintiffs" collectively refers to the Estate of DaMon R. Fisher, Mr. Fisher's personal representatives Darlene Faith Richardson and Robert Smith, Jr., and Tamara Johnson, the other named plaintiffs, and the unnamed class members in 21-1120.

[2] The plaintiffs also moved for leave to file excess pages, Mot. for Excess Pages, ECF 176, and the City did not oppose that motion. The court will therefore grant it.

## BACKGROUND

**I.  Factual History**

The facts of these cases are stated in detail in the court's February 22, 2024, Memorandum denying summary judgment. Mem. at 4-8, ECF 156; *Estate of Fisher v. City of Annapolis*, No. 21-cv-1074-CCB, 2024 WL 732004 (D. Md. Feb. 22, 2024). Only a basic summary is required here.

For decades, the City exempted public housing properties owned and operated by the Housing Authority of the City of Annapolis ("HACA") from its local rental-property licensing and inspection regime. Mem. at 6. Had this regime been applied, HACA properties would have been subject to initial inspections before being granted operating licenses, and such licenses must be renewed either annually or biennially with potential follow-up inspections. *Id.* at 4 (citing Annapolis, Md., City Code §§ 17.44.010-.060). In the event that any renewal inspection uncovered violations of the City Code's Licensing or Property Maintenance chapter, HACA's operating license could have been suspended and eventually revoked. *Id.* at 5 (citing Annapolis, Md., City Code § 17.44.090). But under an "agreement," the City inspected HACA properties on a "complaint only" basis, and very few inspections were actually conducted. *Id.* at 6.

The plaintiffs argue that this "non-enforcement policy" was discriminatory in violation of, among other things, the FHA. They point to demographic data showing that the share of Black renters at HACA properties (91.3%) was disproportionately high when compared to the demographics of both the City as a whole (with a Black population of 25.7%) and its total population of renters subject to the local licensing and inspection policy (with a Black population of between 30% and 39.1%). Mem. at 5; *see* Mot. Ex. 1 at tbls. 1, 2, & 3, ECF 177-3. The plaintiffs say that the non-enforcement policy resulted in extremely poor living conditions at HACA properties, and submit evidence of thousands of City Code violations that were discovered when

the City eventually began inspecting HACA properties after public revelation of the non-enforcement policy. Mem. at 6-7; *see* Mot. Exs. 2-9, ECFs 177-4–177-11.

## II.     Procedural History

On February 22, 2024, the court denied without prejudice the plaintiffs' first motion for summary judgment on their FHA disparate impact claim. The court concluded that summary judgment was premature given several obvious evidentiary shortcomings including demographic analyses focused on improper comparator populations, an absence of proof of harm suffered by all of the class plaintiffs, and a lack of proof (or admission) that Mr. Fisher lived in HACA properties. Mem. at 13-17. In denying the motion, the court explained that it "ha[d] identified some deficiencies, and [that] additional discovery appear[ed] to be necessary," including "[n]ew statistical analyses comparing the relevant populations using the best data currently available." *Id.* at 15, 17.

Following its decision, on April 3, 2024, the court requested the parties to submit a status report "outlining the discovery remaining to be taken . . . and including a proposed schedule for proceeding to dispositive motions." Letter Order, ECF 160. In their response, the plaintiffs stated that they had gathered evidence responsive to the deficient areas described by the court and contended that no further discovery was necessary before renewing their motion for summary judgment on the FHA disparate impact claim. Status Report at 2-6, ECF 166. The City argued that discovery was necessary and requested that a discovery schedule be set and that the case be referred to a Magistrate Judge to manage discovery disputes. *Id.* at 6-10. After a scheduling conference on April 15, the court permitted the plaintiffs to renew their motion for summary judgment on the FHA disparate impact claim following depositions of the experts and gave the City the option to oppose the renewed motion by formally moving for additional discovery. *See* Order, ECF 167.

The plaintiffs submitted their renewed motion on June 14, 2024, Mot. for Summ. J., ECF 177-1 ("Mot."), and the City responded by moving to strike the plaintiffs' motion, Mot. to Strike, ECF 178, and for discovery, Mot. for Discovery, ECF 179-1, on June 28, 2024.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48.

The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 655-67 (2014), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007). Generally, "when there is a close question and 'reasonable minds could differ' when weighing all the facts against the law, then summary judgment is inappropriate." *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 208 (4th Cir. 2014) (quoting *Paroline v. Unisys Corp.*, 879 F.2d 100, 105 (4th Cir. 1989)).

## ANALYSIS

Although the plaintiffs have now introduced evidence relevant to key elements of their FHA disparate impact claim, summary judgment remains improper because they rely on a

debatable inference to prove causation. Because the City could reasonably rebut that inference with competent evidence, the court will deny the plaintiffs' motion for summary judgment.[3]

As explained in the prior Memorandum, to succeed on an FHA claim, a plaintiff must establish that the defendant's conduct proximately caused the complained-of harm. *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 201 (2017). In *City of Miami*, the Supreme Court rejected a foreseeability approach and held that "proximate cause under the FHA requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" 581 U.S. at 201-03 (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). And the Court explained that a sufficiently "direct relation" should generally be limited to the "first step" of causation, the scope of which "depends in part on the 'nature of the statutory cause of action,' and an assessment 'of what is administratively possible and convenient.'" *Id.* at 203 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014)).

The court will assume without deciding that the plaintiffs' asserted harm, poor living conditions in their HACA apartments and buildings, is situated at the "first [causal] step" of conduct that the FHA prohibits, such as "discriminat[ing] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). In any event, because "[a] claim for damages under the FHA . . . is akin to a tort action," *City of Miami*, 581 U.S. at 201, the plaintiffs still "bear the burden of demonstrating that the *defendant's conduct* caused [the] harm suffered . . .," *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1168 (9th Cir. 2013) (emphasis added); *see Spann v. Colonial*

---

[3] Because the plaintiffs have not carried their burden to prove causation, the court does not analyze any other elements of their FHA disparate impact claim.

5

*Vill., Inc.*, 899 F.2d 24, 29 (D.C. Cir. 1990) (R.B. Ginsburg, J.) ("[The plaintiffs] must ultimately prove at trial that the defendants' illegal actions actually caused them to suffer the alleged injuries before they will be entitled to judicial relief."); *Univ. of Texas Sw. Med. Center v. Nassar*, 570 U.S. 338, 346 (2013) (explaining in the Title VII context that "[c]ausation in fact—*i.e.*, proof that the defendant's conduct did in fact cause the plaintiff's injury—is a standard requirement of any tort claim").

"Causation is an intensely factual question that should typically be resolved by a jury." *Pac. Shores*, 730 F.3d at 1168 (citing *White v. Roper*, 901 F.2d 1501, 1505-06 (9th Cir.1990)); 57A Am. Jur. 2d Negligence § 405. It is only "[w]here the facts are undisputed and are susceptible of only one inference, [that] the question of causation is one of law for the court." 57A Am. Jur. 2d Negligence § 408. Moreover, additional caution is warranted here because, as the Fourth Circuit has recently repeatedly advised, generally, "[s]ummary judgment should only be granted 'after adequate time for discovery,'" *Boyle v. Azzari*, __ F. 4th __, 2024 WL 3333984, at *3 (4th Cir. 2024) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *Jenkins v. Woodard*, __ F.4th __, 2024 WL 3490967, at *7 (4th Cir. 2024), and the City has so far been granted only limited discovery in this case, *see* Discovery Mem., ECF 115. Although the facts of the City's non-enforcement policy and the poor conditions at HACA properties are undisputed, the inference required to causally connect conduct and injury is not ineluctable, and summary judgment is therefore inappropriate at this stage of the litigation.

The plaintiffs' evidence consists almost entirely of reams of documentation of the poor conditions at HACA properties. *See* Mot. Exs. 2-9; Mot. at 9-25 (citing evidence of City Code violations in "proximate cause" section). The court agrees that it would be difficult to dispute the existence of this alleged harm. Furthermore, the court has already concluded that the existence of

the City's "non-enforcement policy" is undisputed. Mem. at 11. But even assuming, as seems reasonable, that the City's policy violated the FHA,[4] the necessary causal link between the City's illegal conduct and the plaintiffs' injury remains uncertain.

To fill the gap, the plaintiffs cite "[r]ecent [a]dmissions" supposedly made by the City Attorney, Michael Lyles, at a hearing before the Human Relations Commission for the City of Annapolis. Mot. at 25. According to the plaintiffs' reading, Mr. Lyles acknowledged that "the City deliberately chose and continued the non-enforcement policy with full knowledge that failure to enforce leads to 'blight or slum-like conditions.'" Mot. at 26 (quoting Mot. Ex. 13 at 20, ECF 177-15). A look at his full testimony reveals that the plaintiffs have overstated his comments' import. At the hearing, Mr. Lyles took the position that conducting inspections at HACA properties made conditions *worse*, Mot. Ex. 13 at 13:19-14:5, 21:17-20, and that, although *generally* inspections are intended to "alleviate and to address with the owners the conditions that could fall into blight or slum-like conditions," *id.* at 20:7-11, with regard to HACA properties, enforcing the inspection policy would have resulted in fines and condemnations that would have reduced HACA's funding and therefore caused further deterioration of HACA units, *id.* at 21:4-15, 22:9-15; *see id.* at 38:5-20. As for the actual cause of the poor conditions, Mr. Lyles pointed to HACA's failure to provide maintenance and the Department of Housing and Urban Development's failure to provide adequate funds. *Id.* at 14:2-7, 17:11-16. Mr. Lyles's comments do not "admit" that the non-enforcement policy caused the plaintiffs' harm.

---

[4] In moving for summary judgment solely on the question of FHA disparate impact *liability*, the plaintiffs have suggested that causation need only be proven at the *damages* stage of the litigation. But causation is "'an element of the cause of action,' that must be established 'in every case.'" *City of Oakland v. Wells Fargo & Co.*, 14 F.4th 1030, 1042 (9th Cir. 2021) (en banc) (quoting *Lexmark*, 572 U.S. at 134 n.6, 135). The court declines to proclaim the City as an FHA violator without allowing additional time for discovery.

Secondarily, the plaintiffs point to evidence showing that "since inspections resumed in full in 2021, the conditions of the HACA Properties have improved overall." Mot. at 17. And it does appear that the number of violations per unit has decreased for each year that inspections have been conducted. *Id.* at tbl. 6. But although it may be probative, "mere 'correlation does not prove causation,'" *Md. Shall Issue, Inc. v. Anne Arundel Cnty.*, 662 F. Supp. 3d 557, 578 (D. Md. 2023) (quoting *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 213 (4th Cir. 2020)), and there is no evidentiary basis compelling a conclusion that this change was caused by the inspections, as opposed to a response to increased public scrutiny, or some other explanation.

Additionally, Dr. Parnell briefly opines that "[t]he City's admitted housing policy . . . has had a negative and disproportionate impact on the almost exclusively Black population of the HACA properties," Mot. Ex. 1 ¶ 12, but the evidence on which he relies only establishes a racial disparity between HACA renters and City-wide renters. Dr. Parnell offers no basis, expert or otherwise, to support his opinion that the policy caused a negative impact, *see* Mot. Ex. 11 at 130:6-131:12, ECF 177-13, and the court therefore cannot rely on it, *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 200 (4th Cir. 2001) ("A reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999))).

At bottom, the plaintiffs' primary support for concluding that the City's non-enforcement policy caused the poor conditions at HACA properties is inferential. And the court agrees that the support for that inference is strong. But it is not the only one possible, and plaintiffs seeking pre-discovery summary judgment face an extremely high bar for proving disputed causation.

Accordingly, at this stage of the proceedings, the court cannot deny the City the opportunity to gather evidence that may allow it to make its case to a jury.

Because the court will deny the plaintiffs' renewed motion for summary judgment even when considering all of the plaintiffs' submissions, there is no need to resolve the City's motion to strike, Mot. to Strike, ECF 178, and it will therefore be denied as moot. The City's motion for discovery, Mot. for Discovery, ECF 179, will be granted insofar as additional discovery will be permitted. The motion will be deferred to the extent that it proposes a specific discovery schedule; the parties will be directed to confer and submit a proposed discovery schedule within twenty-one days of this Memorandum and Order.

## CONCLUSION

For the above-stated reasons, the plaintiffs' renewed motion for summary judgment will be denied without prejudice. A separate Order follows.

    7/26/2024  
Date

/s/  
Catherine C. Blake  
United States District Judge