**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**Baltimore Division**

| | |
|---|---|
| **TAMARA JOHNSON, et al. individually and on behalf of all others similarly situated**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**THE CITY OF ANNAPOLIS,**<br><br>    **Defendants.** | **Case No. 1:21-cv-01120-MJM** |
| **THE ESTATE OF DAMON R. FISHER, et al.,**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**THE CITY OF ANNAPOLIS, et al.**<br><br>    **Defendants.** | **Case No.: 1:21-cv-01074-MJM** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DECERTIFY (ECF 183) [1]**

The City fails to provide a sufficient basis for the extraordinary remedy of decertification. As discussed below, the City relies on fabricated citations and quotations, misstatements of law, and arguments that it knowingly waived when it did not oppose class certification and agreed to bifurcated trials on liability and damages. The City's reliance on fabricated citations and quotations

---

[1] The City of Annapolis appears to have filed the same motion twice. *Compare* ECF 182 with ECF 183. It appears the difference is the first filing only has "page 5" of its motion. The second filing has the full five pages of the motion document.  References herein will be made to ECF 183 and its attachments.

1

raises a question as to whether the Court should even consider the motion. [2]

The requirements of Rule 23 remain fully satisfied, and no intervening change in law, newly discovered evidence, or manifest injustice exists to justify disturbing this Court's prior unopposed certification order. To grant the City's motion would undermine judicial economy, prejudice approximately 1,500 class members, and reward the City's tactical delay of this nearly five-year-old case. For these reasons, the Motion to Decertify should be denied, and this case should proceed to trial as previously ordered.

## I.    Introduction

The Court granted class certification in this action nearly three years ago. *See* ECF 97 (February 6, 2023). The City of Annapolis never addresses that order or the fact that Defendant did not oppose the certification of the class at that time.  Later, by way of a Joint Report on Discovery entered as an order (ECF 151) the City agreed as follows:

- that they will proceed on combined discovery on all issues related to liability and damages related to all Counts of the Complaints in *Fisher* and *Johnson*;

- that liability and damages will be bifurcated, wherefor if Plaintiffs prevail on liability for violations of their Federal Civil Rights [Footnote 1] or proving a violation of the Maryland Declaration of Rights,[Footnote 2] the parties will then move to subsequent individual damages trials for the plaintiffs and all members of the class or will otherwise submit the case to a Magistrate for resolution of individual compensatory damages on a case-by-case basis;

The footnote 1 referenced states:

"Even if respondents' suspensions were justified, and even if they did not suffer any other actual injury, the fact remains that they were deprived of their right to procedural due process…. [D]enial of procedural due process

---

[2] Plaintiffs cannot be sure, but the motion's inclusion of fabricated citations and quotations are hallmarks of an AI generated motion with "hallucinations," which have been described as "inaccurate depictions of information from AI models that suffer from incomplete, biased, or otherwise flawed training data." *Neal v. Frayer*, No. CV 24-0778-BAH, 2025 WL 3204710, at *15 (D. Md. Nov. 17, 2025)(citations and quotations omitted).

should be actionable for nominal damages without proof of actual injury. *Carey v. Piphus*, 435 U.S. 247, 266 (1978)."

The footnote 2 referenced states:

"Therefore, in order to justify an award of compensatory damages under Article 24, a plaintiff must show an actual injury resulting from a constitutional deprivation. And it is settled that, in the absence of an actual injury, such a deprivation will justify only nominal damages. *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 208 (4th Cir. 2002) (citing *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (citations and quotations omitted)."

Despite the earlier findings by the Court that all of the elements of Rule 23 are met, the decision by the City not to oppose the motion for class certification, and its agreement to the class trial scheduling and procedure, the City has now filed a motion asking the Court to take the "extreme step" of decertifying the class. *See Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, 907 F. Supp. 2d 492, 504 (S.D.N.Y. 2012), *aff'd sub nom. Gulino v. Bd. of Educ. of New York City Sch. Dist. of City of New York*, 555 F. App'x 37 (2d Cir. 2014) ("Decertification is an extreme step, particularly at a late stage in the litigation, where a potentially proper class exists and can easily be created.") (internal quotations omitted). The City focusses its attack on the class representatives and describes this case as "an unmanageable amalgam of individualized grievances, led by fatally flawed representatives."  ECF 183-1 at page 1.

## II.    The City Cites Legal Authority Which Appears Not To Exist

The City opens its motion with a citation to a case which appears not to exist.  The City says that *Stott v. Haw. Airlines, Inc.*, 340 F.R.D. 396, 401 (S.D. Cal. 2021) stands for the proposition that "[a] court's duty to ensure compliance with Rule 23 is a 'continuing one,' and the Court may decertify a class at any time if it becomes apparent that the requirements are no longer met."  ECF 183-1 at 1.  But the citation, 340 F.R.D. 396, is to the sixth page of the decision in *L.A. Terminals, Inc. v. United Nat'l Ins. Co.*, 340 F.R.D. 390, 396 (C.D. Cal. 2022), a case which discusses the party's continuing duty to supplement discovery responses, and which is not even a

class case.  Giving the City the benefit of the doubt, the undersigned assumed that the pin cite to

340 F.R.D. 396, **401**, might have been intended.  But this pin cite directs to *de Borja v. Razon*, 340

F.R.D. 400, 401 (D. Or. 2021), which is not a class action, and does not support the premise for

which the citation was provided.  Finally, the undersigned used Westlaw to look up the case names

of "*Stott v. Haw. Airlines, Inc.*" and "*Stott v. Hawaii Airlines*."  But Westlaw did not return any

cases with either of those names.  In short, despite diligent efforts, the undersigned were unable to

locate the case cited and quoted by the City.  On information and belief, this is an artificial creation.

The City offers several additional citations that do not support the legal principle for which

it cited the authority.  For example, on page 6 of ECF 183-1, the City states: "*See, e.g., Peters v.*

*Aetna Inc.*, 2 F.4th 199, 241–43 (4th Cir. 2021) (finding representative atypical where her claim

was subject to unique exhaustion defense)."  The problem is that the words "atypical," "unique,"

and "exhaustion" do not appear in the case.  In fact, in that case, the Fourth Circuit reversed the

district court's denial of class certification stating: "we vacate and remand the district court's order

denying class certification for a full reevaluation under Rule 23 in conformity with this opinion."

*Peters v. Aetna Inc.*, 2 F.4th 199, 245 (4th Cir. 2021).

The City offers quotations from six (6) other cases where the quotations simply do not

exist.  For the sake of clarity, the undersigned have reprinted in quotation marks the City's entire

sentence, and placed the City's phantom quotations in **bold lettering**:

| PAGE OF CITY BRIEF (ECF 183-1) | FULL QUOTE AND CITATION | PROBLEM |
| --- | --- | --- |
| p. 5 | "To maintain a class action, Plaintiffs bear the **'strict burden of proving by a preponderance of the evidence'** that all requirements of Rule 23 are met. *Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013)." | **"strict burden of proving by a preponderance of the evidence"** does not appear in *Behrend*. |
| p. 5 | "In the Fourth Circuit, this means the class must be defined with 'objective criteria' that make its members 'readily identifiable' in an | **"administratively feasible manner"** does |

4

| | | |
|---|---|---|
| | '**administratively feasible manner.**' *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)." | not appear in *EQT Prod. Co.* |
| p. 6 | "Typicality is destroyed where the representative is subject to '**unique defenses**' which are '**likely to become a major focus of the litigation.**' *Id*." [The *Id.* refers to "*Broussard*, 155 F.3d at 340"]. | "**unique defenses**" and "**likely to become a major focus of the litigation**" do not appear in *Broussard*. |
| p. 6 | "*See Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019) (noting a representative must have '**at least a minimal degree of knowledge**' about the case)." | "**at least a minimal degree of knowledge**" does not appear in *Krakauer*. |
| p. 9 | "Under *Broussard*, typicality is destroyed when unique defenses risk becoming a '**major focus of the litigation**.' *Broussard v. Meineke Discount Muffler Shops, Inc*. 155 F.3d 331 at 340 (4th Cir. 1998)." | "**major focus of the litigation**" does not appear in *Broussard*. |
| p. 11 | "The District Court of Maryland requires that class-wide issues be capable of resolution in a way that is '**economically and administratively feasible,**' a standard this case cannot possibly meet. *In re Titanium Dioxide*, 284 F.R.D. 328 at 337 (D.MD 2013)." | "**economically and administratively feasible**" does not appear in *Titanium Dioxide*. |

No less problematic is when the City argues against a Rule 23(b)(2) injunctive class, stating: "under Rule 23(b)(2), the class must be decertified."  ECF 183-1 at 11. But the court certified a class based on Plaintiff's motion to certify pursuant to Rule 23(b)(3), and in the alternative, Rule 23(c)(4). *See,* Order Certifying Class (ECF 97), and ECF 54-1, Motion to Certify Class. Although the Complaint mentioned Rule 23(b)(2) in passing (ECF 1 at para. 89), the Plaintiffs did not move for certification of an injunctive class, and the court did not certify an injunctive class. *Id.*

As for the deposition exhibits, nearly all of the City's references in the brief are to pages that it did not include in the exhibit provided.  These factual references are nevertheless irrelevant given the real case law and statutes discussed *infra*.

### III.    Argument

Notwithstanding the problems noted above, the City's motion falls far short of its burden for decertification. While there is no controlling Fourth Circuit precedent on the specific parameters for decertification, the following reasoning should apply:

> a court may not disturb its prior findings absent some significant intervening event or a showing of compelling reasons to reexamine the question. Compelling reasons include an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.

*Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, 907 F. Supp. 2d. at 504 (internal quotation and citations omitted).

### A.    There are No Legally or Factually Compelling Reasons to Decertify the Class

Defendant argues for decertification by claiming that the Plaintiffs' deposition testimony consists of "newly discovered evidence." It does not. "Evidence is not newly discovered if it was actually known or could have been known by the diligence of the defendant or his counsel." *United States v. Cimera*, 459 F.3d 452, 461 (3d Cir. 2006) (internal quotation and citations omitted); *see also United States v. Bujese*, 371 F.2d 120, 125 (3d Cir.1967). First, the City neither opposed Plaintiff's Motion to Certify Class nor requested class discovery in response to Plaintiff's Motion to Certify. The depositions of Class Representatives revealed nothing but a more detailed extrapolation of the damages alleged in the Complaint. Certainly, the City could have obtained their deposition testimony to contest the motion, but the City's failure to do so does not make their deposition testimony "newly discovered" at this late stage.

Next, the Defendant argues that the class representatives are "both former tenants with no stake in the prospective injunctive relief sought on behalf of current tenants." ECF 183-1 at 1. As noted above, this certified class action does not seek injunctive relief. None of the class members have a stake in prospective injunctive relief for the simple reason that this case does not seek injunctive relief.

The City's other arguments and citations fare no better.  It argues that Class Representatives Tamara Johnson and Tyonna Holliday "present fundamentally divergent and incompatible claims."  ECF 183-1 at 1.  Here, the City confuses the common class-wide injury causally related to the discrimination with individual damages suffered, which – as the City agreed – will be determined at damages trials after the liability trial.  Indeed, "[a]s *Dukes* explained, class members suffer a common injury for Rule 23(a)(2) when their claims 'depend upon a common contention ... capable of classwide resolution.'"  *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 155 (3d Cir. 2023) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

The difference in damages between Plaintiffs is nothing new, and it does not preclude class certification.  "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotation and citations omitted).

The parties already acknowledged that the class members would have different damages. That is precisely why the parties specifically agreed that there would be "subsequent individual damages trials for the plaintiffs and all members of the class or will otherwise submit the case to a Magistrate for resolution of individual compensatory damages on a case-by-case basis."  ECF 151 at 2.  The Defendant ignores that the complaints of rodents, mold, conditions issues, etc., all arise from the same unequal or discriminatory treatment that they received from the City through its "adopting policies and practices of not licensing and inspecting public housing properties on the same basis as private rental housing within the City."  *See* ECF 97 at 1-2 (Class certification order).  City inspections would have addressed the various problems faced by tenants, including those the City plainly identifies in its motion relating to the Class Representatives, who were not provided the same basic protections that City licensing and inspection provides to all other rental

7

properties in Annapolis.

The damage to and disrepair of their units is directly and causally related to the failure to inspect. As Judge Blake stated in her opinion denying the Plaintiffs' second motion for summary judgment, there exists a strong inference of causation:

> the plaintiffs' primary support for concluding that the City's non-enforcement policy caused the poor conditions at HACA properties is inferential. And the court agrees that the support for that inference is strong. But it is not the only one possible, and plaintiffs seeking pre-discovery summary judgment face an extremely high bar for proving disputed causation.

ECF 142 at 8. This inference has now been further and fully supported through the additional time for discovery in this case, a reality the City will have to confront in Plaintiff's motion for summary judgment and/or at trial in this matter.

### B. The Requirements of Rule 23 Remain Fully Met

#### a. Defendant Does Not Dispute Numerosity or Superiority

The Defendant's arguments on the various Rule 23 requirements are also without merit. There are approximately 1,500 class members who have already been identified by HACA as tenants of the Properties during the class period. Notices were sent to all class members. Defendant does not contest the numerosity requirement under Rule 23(a)(1) or the superiority of a class proceeding under Rule 23(b)(3).

#### b. The Class Has Already Been Ascertained

The City claims that the class is not ascertainable. Defendant states that Ms. Johnson's "… memory of her move-in date was off by two years. (Johnson Dep. 69:12–16)." *See* ECF 183-1 at p. 7. This is the first of many citations to deposition pages that are not included in the Defendant's exhibit at ECF 183-2. Nevertheless, the City contends that because Ms. Johnson had her dates of tenancy confused by two years, then the class may be too difficult to ascertain. *See* 183-1 at p. 7. Defendant ignores that a list of class members has already been created. HACA maintained rental

records identifying all tenants, and those records have already been used to compile the class list.

In fact, the entire class has been placed on notice pursuant to Rule 23. The City's argument about

ascertainability is meritless.

### c. There Is A Common Issue That Will Resolve The Claims

The City's cherry-picked reliance on *Wal-Mart Stores, Inc. v. Dukes* to attack commonality

is misplaced. Defendant states: "Plaintiffs fail to present a 'common contention' that can resolve

an issue central to every claim 'in one stroke.'" ECF 183-1 at 8. Defendant wholly ignores the

facts in *Wal-Mart* that led to that finding.

In *Wal-Mart*, there was a lack of commonality for the class members because the claims of

discrimination were dependent on the actions of multiple supervisors. The Supreme Court there

held:

> Here respondents wish to sue about literally millions of employment
> decisions at once. Without some glue holding the alleged *reasons* for all
> those decisions together, it will be impossible to say that examination of all
> the class members' claims for relief will produce a common answer to the
> crucial question *why was I disfavored*.

*Wal-Mart Stores*, 564 U.S. at 352 (2011) (emphasis in original). In other words, what one

supervisor did may be different than another supervisor. Therefore, there was no one set of facts

to judge if there was discrimination. That issue is not present here because the discrimination is

based on a single policy (not to license and inspect) enacted by a single entity, the City of

Annapolis. The single policy enacted by a single actor in this case presents precisely the opposite

situation to that of *Wal-Mart*, and this case has "the capacity of a class-wide proceeding to generate

common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (internal citations and

quotations omitted) (emphasis in original). The capacity of the City as a singular entity making

and setting its policy and acting upon it is the "glue" referred to in *Wal-Mart*, and lies in sharp

contrast to the millions of employment decisions made by multiple supervisors that precluded

commonality in that case.

The City argues that "Causation Is Not a Common Question." This argument is a non-starter because "Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common." *§ 3:20. Commonality standard—Only a single common issue is required, 1 Newberg and Rubenstein on Class Actions § 3:20 (6th ed.)*.

Here, the court already identified a single common issue in certifying the class: "…the City adopting policies and practices of not licensing and inspecting public housing properties on the same basis as private rental housing within the City." ECF 97 at 1-2.

### d. Plaintiffs' Claims Are Typical and Defendant's Arguments Misstate and/or Misquote the Law

As for typicality, the leading class action treatise explains that "[t]he plaintiffs' claims need not be identical to those of the absent class members. Many courts have held that typicality is satisfied so long as the named representatives' claims share the same essential characteristics as the claims of the class at large." *§ 3:29. Typicality standard, 1 Newberg and Rubenstein on Class Actions § 3:29 (6th ed.)*. The City never contests the fact that here the Class Representatives have the same claims as the class members. *Newberg and Rubenstein* goes on to provide that the "test for typicality is not demanding. A plaintiff's claim is typical if it arises from the same event, practice, or course of conduct that gives rise to the claims of other class members and if his or her claims are based on the same legal theory." *Id.* Typicality is not a close question in this case.

While ignoring this clear resolution, the City instead argues that typicality is destroyed because, in its view, there are "unique defenses" which are "likely to become a major focus of the litigation." *See* ECF 183-1 at p. 6 (allegedly quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) though the quotations do not exist in the case). The City then proceeds to cite *Peters v. Aetna Inc.*, 2 F.4th 199, 241–43 (4th Cir. 2021) stating the court resolved the case in such a way "finding representative atypical where her claim was subject to unique exhaustion defense." *See* ECF 183-1 at p. 6. As indicated above, the words "atypical,"

"unique," or "exhaustion" do not appear anywhere in the *Peters* case, and in fact the Fourth Circuit there reversed in part a denial of class certification.

As discussed *supra,* on Page 9 of its brief, the City then cites *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998). Like *Peters*, the *Broussard* case does exist in reality, but it does not mention unique defenses or the notion of a "major focus of the litigation" at all. It is true that the *Broussard* court reversed class certification and stated that the Plaintiff lacked commonality and typicality, however, that was because the class in that case included various groups that had claims related to various and differing contracts. *Id.* at 340 ("First, plaintiffs simply cannot advance a single collective breach of contract action on the basis of multiple different contracts."). The varying contracts upon which their theory of liability rested was the basis for the court's decision, not that there were unique defenses that would become a major focus. Indeed, *Broussard* did not discuss the typicality issue the City cites in its memorandum. In short, neither case supports the Defendant's argument.

In any event, there is nothing to show that there are unique defenses in this case that may become a major focus or even that there are "unique defenses." The existence of defenses does not defeat certification even if they have to be tried separately. *See Tyson Foods, Inc. v. Bouaphakeo*, *supra.* Moreover, the City's alleged defenses are not even relevant to the claims being made. For example, the Defendant argues that "Ms. Holliday's sworn admission that she was evicted for non-payment of rent because she 'didn't care, honestly,' is a case-dispositive unique defense.' (Holliday Dep. 32:13–33:2)." ECF 183-1 at p. 9.[3] The City's deposition citation is to pages that are not included in the Defendant's Exhibit. *See* ECF 183-2. Ms. Holliday goes

---

[3] For clarity, this line of questioning was related to when Ms. Holliday had lived in public housing around "[m]aybe 2000 or the early 2000s," a time when she would have been in her early 20s. ECF 183-2 at 31:4-17. After that time, she moved out of state for an extended period before returning to Annapolis and then later again renting a HACA Property.

on in the very next sentence to state that she "[d]idn't have [her] priorities together then," given her age. More specifically, however, Defendant fails to show how Ms. Holliday's confused priorities 25 years ago provide the City a defense to the claims of discrimination and constitutional violations. It doesn't. The paragraph ends with another citation to *Peters v. Aetna Inc.*, 2 F.4th 199, for the proposition that it makes her "atypical" when, as noted above, the case never substantively discusses the typicality prong of Rule 23.

Defendant also states "Ms. Johnson is likewise subject to a powerful, unique defense regarding her father's unauthorized "patch up" work. (Johnson Dep. 88:5–7)." ECF 183-1 at 9. Again, the deposition citation is to a page that is not included in the Defendant's Exhibit. *See* ECF 183-2. Nevertheless, Defendant does not explain how patching up holes made by mice affects the discrimination and equal protection claims. [4] The City yet again relies on the same false citation to *Broussard*, that never mentions "unique defenses" or "major focus of the litigation" at all. ECF 183-1 at 9. The paragraph ends with another red herring related to Ms. Johnson's daughter's "unique personal injury" claim.

In sum, whether or to what extent there are "unique defenses" related to the actual damages to Plaintiffs and members of the class, including the extent of mitigation through self-help undertaken by the class members in their individual units, may be issues that are relevant to the individual damages trials previously agreed to by the City. However, they have no bearing on the class liability claims against the City for its discrimination and unequal treatment.

---

[4] The City's line of argument seemingly proceeds as follows: Ms. Johnson claims she was discriminated and her equal protection rights were violated which resulted in mice and other terrible conditions in her apartment, but because her father helped her patch the holes in her walls, as a result, "[a]djudicating her claim will require a mini-trial on the nature of her father's repairs, whether they were performed negligently…." ECF 182-1 at 9. Whether or how Ms. Johnson attempted to mitigate her damages in her unit is unrelated to the liability of the class claim under Rule 23.

### e. The Plaintiffs Are Adequate

The City does not challenge the fact that each Plaintiff has demonstrated "some knowledge of this case and has fulfilled her duties as class representative by sitting for a deposition and participating in the litigation process." *Yates v. NewRez LLC*, 686 F.Supp.3d 397, 411 (D. Md. 2023). Defendant instead claims that both class representatives are inadequate because they "are former tenants. (Johnson Dep. 9:19–10:7; Holliday Dep. 11:13–14)." 183-1 at 10.[5]  Once again, with the exception of page 9 of the Holliday transcript, the citation to the depositions are pages that are not included in the Defendant's Exhibit.  ECF 183-2. The class is based on occupancy during a specific time period – May 7, 2018 to May 7, 2021.  *See* ECF 97 at 1. Current tenancy is not a requirement to be a class member. Indeed, there are many former **and** current tenants who **are** members of the class.  In fact, some "current tenants" may not even be class members because they were not tenants during the class period. The City's argument that the Plaintiffs are inadequate because they are former tenants is without merit.

Nevertheless, the alleged conflict is that "[t]heir sole interest in this litigation is to maximize a retrospective monetary award for themselves and other former tenants."  ECF 183-1 at 10.  The City then says that the primary goal of "the *current* tenants… is money damages." *Id*. (emphasis in original). Since both want money damages there is no conflict. Ms. Johnson and Ms. Holliday both seek the same goal of money damages for current and former tenants alike who lived in the HACA units during the class period. This is entirely unlike the different relief that different groups sought in *Broussard*.[6]

Yet, the City, after acknowledging all class members want damages, concludes that the

---

[5] Both Class Representatives were tenants at the time the lawsuit was filed nearly five (5) years ago.

[6] Additionally, it is possible the Defendant's reference to "current tenants" is related to the Defendant's arguments concerning a Rule 23(b)(2) injunctive class, which does not exist in this case.

class representatives are "fundamentally and irreconcilably antagonistic to the interests of *current* tenants, who comprise a substantial portion of the class and whose primary goal is money damages." *Id*.  (emphasis in original). There is no factual basis for the City's conclusion, which is contrary to its own understanding that all class members seek money damages.

The next argument is that the class representatives have not been sufficiently involved because Ms. Johnson was "not involved in deciding 'who would be sued and how they would be sued.' (Johnson Dep. 51:7–9, 63:13–18)."  ECF 183-1 at 10.  Again, the City references deposition pages that are not in its exhibit.  ECF 183-2.  Nevertheless, it is in no way unusual that the attorney hired by a client makes these types of legal decisions.  As explained in *Howard v. Liquidity Servs. Inc.*:

> The adequacy requirement does not require class representatives to initiate legal proceedings, nor does it mandate that representatives have intricate knowledge of complex legal claims. Rule 23(a)(4) does not require either that the proposed class representatives have legal knowledge or a complete understanding of the representative's role in class litigation. A class representative need only possess a minimal degree of knowledge necessary to meet the adequacy standard. While the lead plaintiffs' involvement in litigation can be considered under the adequacy prong, only a total lack of interest and unfamiliarity with [the] suit would be sufficient grounds to deny plaintiffs' motion [to certify class]. Particularly in complex cases, the qualifications of class counsel are generally more important in determining adequacy than those of the class representatives.

322 F.R.D. 103, 135 (D.D.C. 2017) (internal quotations and citations omitted).

The City also complains that Ms. Holliday "has held no formal meetings with class members she purports to represent. (Holliday Dep. 104:6–22, 104:14–17) ."  Once again, the City references deposition pages that are not in the Defendant's exhibit. Regardless, there is no requirement that the Plaintiff have formal meetings with class members. The Plaintiffs have in no way abdicated their fiduciary duty.

All of the requirements of Rule 23(a) are met in this case.

###### f.  Defendant's Predominance Arguments Are Without Merit and There Is No Certified 23(b)(2) Claim

The City addresses the predominance issue, with the argument caption: "Plaintiffs' Claims for Monetary Relief Preclude Certification Under Rule 23(b)(2)." ECF 183-1 at 11.  Predominance is not a requirement for (b)(2) classes and this case is for money damages and was certified under Rule 23(b)(3).[7]

The City also posits an "Impossibility of a Class-Wide Damages Model Under *Comcast*." ECF 183-1 at 11.  As noted above, the parties already agreed to bifurcation of liability to be followed by "subsequent individual damages trials for plaintiffs and all members of the class." *See* ECF 151.  The caveat here being – as agreed to by the City – that nominal damages exist for violations of either or both the Federal Civil Rights or the Maryland Declaration of Rights as stated in the Joint Report on Discovery which the court approved and entered as an order.  *See id.* at footnotes 1 and 2.

The City also argues that there is "Individualized Liability and Causation." ECF 183-1 at 10. There may be other issues involved in the case, but the question is whether the common issue – the City adopting policies and practices of not licensing and inspecting public housing properties on the same basis as private rental housing in the City – is the predominant issue. Nowhere does the City contest that this is the predominant issue, nor could it.  Again, the parties already reached consensus on the class liability approach with their agreement "that liability and damages will be

---

[7] There is no injunctive relief claim in the present case because the prior case of *White v. City of Annapolis, et al.*, Civil Action No. 1:19-cv-01442-CCB, quickly resolved the injunctive issue at the heart of that case as well as the present.  In that lawsuit plaintiffs alleged that the City had discriminated against residents of public housing through their jointly agreed upon non inspection policy as it related to the HACA Properties.  ECF 1 at ¶67.  That case was filed on May 16, 2019, and less than one month later, on June 10, 2019, the City Counsel unanimously adopted R-26-19, which resolved that "the City of Annapolis [would once again] begin inspecting HACA units under the City's rental licensing program." *Id.* at  ¶69.

Injunctive relief was sought in the *White* case by virtue of its demand that the City begin inspections of the HACA Properties, a goal achieved before the City even filed its Answer.

bifurcated, wherefore if Plaintiffs prevail on liability for violations of their Federal Civil Rights or proving a violation of the Maryland Declaration of Rights, the parties will then move to subsequent individual damages trials…." *See* ECF 151.

### Conclusion

For the foregoing reasons, the City's motion to decertify the class should be denied.

Respectfully submitted,

Date: December 9, 2025

**The Donahue Law Firm**

By:  */s/ P. Joseph Donahue*
P. Joseph Donahue, Esquire
Bar Number: 06245
18 West Street
Annapolis, Maryland 21401
Telephone: 410-280-2023
Fax: 410-280-0905
Email: pjd@thedonahuelawfirm.com

*/s/ Peter A. Holland*
Peter A. Holland
Fed. Bar No. 10866
THE HOLLAND LAW FIRM, P.C.
914 Bay Ridge Rd. Ste 230
Annapolis, MD 21403
Telephone: (410) 280-6133
Facsimile: (410) 280-8650
peter@hollandlawfirm.com

/s/ Scott C. Borison
Scott C. Borison (Bar No. 22596)
Borison Firm LLC.
1400 S. Charles St.
Baltimore MD 21230
Telephone: (301) 620-1016
scott@borisonfirm.com

*Counsel for Plaintiffs and the Class*